IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER ROSE; ASHLEY ROSE, a minor, by and through her Guardian Ad Litem, her custodial parent, Peter Rose; BRITNEY ROSE, a minor, by and through her Guardian Ad Litem, her custodial parent, Peter Rose; and PETER ROSE JR., a minor by and through his Guardian Ad Litem, his custodial parent, Peter Rose,<br><br>            Plaintiffs,<br><br>    v.<br><br>SAN JOAQUIN COUNTY; SAN JOAQUIN COUNTY DEPUTY DISTRICT ATTORNEY KEVIN MAYO; and DOES 1 THROUGH 25,<br><br>            Defendants. | 2:05-cv-2208-GEB-PAN(JFM)<br><br>ORDER[*] |

Defendants move to dismiss Plaintiffs' Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Defendants argue, inter alia, Plaintiffs' claims are barred by collateral estoppel, the Rooker-Feldman doctrine, various immunities, and state law. Plaintiffs oppose the motion.

---

[*] This motion was determined to be suitable for decision without oral argument. L.R. 78-230(h).

BACKGROUND[1]

In December of 1994, Plaintiff Peter Rose ("Rose") was arrested for the sexual assault of a thirteen-year-old girl in Lodi, California. At his arraignment on March 1, 1995, Rose was found to be indigent and Harry Hudson ("Hudson") was appointed to represent him. Defendant Kevin Mayo ("Mayo") represented the People of California in the criminal proceedings against Rose in the San Joaquin County Superior Court ("the Superior Court").

On November 3, 1995, a jury convicted Rose of kidnapping a child under the age of fourteen, kidnapping for sex, lewd and lascivious acts with a person under fourteen years of age, forcible rape, and forcible oral copulation.[2] Rose was sentenced to twenty-seven years in prison.

Rose appealed his conviction. Rose's conviction was affirmed by the California Third District Court of Appeal ("the Court of Appeal") on December 22, 1997.

In March 1998, Rose filed a Petition for Writ of Habeas Corpus in the Court of Appeal based on ineffective assistance of counsel. The Court of Appeal referred the petition to the Superior Court for a hearing. After conducting a hearing, at which testimony

---

[1] Defendants request judicial notice of a number of court documents. (See Defs.' Req. Judicial Notice filed Feb. 10, 2006.) Plaintiffs do not object. It is appropriate to take judicial notice of such matters of public record. Fed. R. Evid. 201(b); Lee v. City of L.A., 250 F.3d 668, 688-89 (9th Cir. 2001); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980). Accordingly, Defendants' request is granted.

[2] The prosecutor dismissed two counts of aggravated sexual assault and an enhancement allegation for the forcible rape and forcible oral copulation counts after the jury returned its verdict.

was taken and exhibits were received, the Superior Court denied habeas relief.

On June 7, 2004, "DNA testing was conducted on a semen sample that was extracted from [the victim's] underpants following the sexual assault [for] which [Rose] was convicted." (Compl. ¶ 20.) "As a result of more advanced DNA testing since 1995," the testing in 2004 "conclusively excluded [Rose] as the donor of the semen." (Defs.' Req. Judicial Notice, Ex. 8 at 4.) Based on the results of the "more advanced DNA testing" conducted in 2004, the Superior Court granted Rose's subsequent habeas petition on October 29, 2004, and on February 18, 2005, declared him factually innocent of the crimes for which he was convicted.

On November 11, 2005, Plaintiffs brought this action raising federal and state constitutional tort claims based on the alleged actions of Defendants which led to Rose's wrongful conviction. Plaintiffs' Complaint contains six counts, all of which stem from either the "investigative activities" of Mayo or the alleged ineffective assistance of counsel Rose received because of Defendant San Joaquin County's ("the County") policy for appointing defense counsel. Count One alleges the County violated Rose's Sixth Amendment right by having a policy that denied him effective assistance of counsel. (Compl. ¶ 25.) Count Two alleges the County violated Rose's right under the California Constitution because its policy denied him effective assistance of counsel. (Id. ¶ 27.) Count Three alleges the County violated Rose's substantive due process right under the Fourteenth Amendment because it "knew or should have known that [Mayo's investigative activities] would and did yield false information . . . ." (Id. ¶ 29.) Count Four alleges Defendants

1  violated Rose's right to due process under the California Constitution
2  since Defendants "knew or should have known that the [investigative
3  activities of Mayo] would and did yield false information . . . ."
4  (Id. ¶ 32.)  Count Five alleges Defendants violated Plaintiffs'
5  substantive due process rights to familial companionship, society, and
6  support under the Fourteenth Amendment since Defendants caused Rose to
7  be wrongfully incarcerated for ten years.  (Id. ¶ 35.)  Count Six
8  alleges Defendants violated Plaintiffs' substantive due process rights
9  to familial companionship, society, and support under the Fourteenth
10 Amendment since Defendants "knew or should have known that [Mayo's
11 investigative activities] would and did yield false information" that
12 caused Rose to be wrongfully incarcerated for ten years.  (Id. ¶¶ 37,
13 38.)

## DISCUSSION

When considering a Rule 12(b)(6) dismissal motion, all material allegations in the complaint are accepted as true and are construed in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  Therefore, the plaintiff is given the benefit of every reasonable inference that can be drawn from the well-pleaded allegations of the complaint. Retail Clerks Int'l Ass'n v. Shermahorn, 373 U.S. 746, 753 n.6 (1963).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  "A complaint may be dismissed [under Rule 12(b)(6)] for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory."

Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

I.   Collateral Estoppel

Defendants argue the Complaint must be dismissed because Plaintiffs' claims are barred by collateral estoppel. Defendants argue this bar applies because all Plaintiffs' claims are based on theories of "ineffective assistance of defense counsel" or "prosecutorial misconduct," both of which were decided "adversely to [Rose] in the course of his criminal appeal and [state] habeas proceedings." (Defs.' Mot. at 4-5.)

Federal courts will apply the collateral estoppel doctrine to issues decided in a state court habeas proceeding if (1) the state court afforded the federal plaintiff a "full and fair" opportunity to litigate the issues, Silverton v. Dep't of Treasury, 644 F.2d 1341, 1346-47 (9th Cir. 1981), and (2) California courts would give collateral estoppel effect to the issues decided in the habeas proceeding. Palomar Mobilehome Park Ass'n v. City of San Marcos, 989 F.2d 362, 364 (9th Cir. 1993).

The record reflects that the Superior Court fully considered Rose's ineffective assistance of counsel and prosecutorial misconduct claims before it denied Rose's habeas petition on the merits. Therefore, Rose was afforded a full and fair opportunity to litigate these issues in the prior state court proceeding. See id. at 365 (holding plaintiff had full and fair opportunity to litigate issues where the "state court[] fully considered [plaintiff's] rights under the Constitution").

California courts will give collateral estoppel effect to a decision in a prior proceeding if: (1) the issue sought to be

1  precluded from relitigation is identical to that decided in a former
2  proceeding; (2) the issue was actually litigated in the former
3  proceeding; (3) the issue was necessarily decided in the former
4  proceeding; (4) the decision in the former proceeding was final and on
5  the merits; (5) the party against whom preclusion is sought is the
6  same as, or in privity with, the party to the former proceeding; and
7  (6) preclusion "in [the] particular circumstance would be fair to the
8  parties and constitute[] sound judicial policy." Lucido v. Superior
9  Court, 51 Cal. 3d 335, 341-43 (1990).

   A. Ineffective Assistance of Counsel

11    Plaintiffs concede that Rose's state habeas petition
12 "raise[d] the issue of ineffective assistance of counsel." (Pl.'s
13 Opp'n at 5.) However, Plaintiffs argue collateral estoppel is
14 inappropriate because (1) "the facts surrounding th[e] issue[] [of
15 ineffective assistance of counsel] have markedly changed" since
16 conclusion of the former proceeding, rendering the issue in this
17 proceeding distinct from that decided by the Superior Court, and (2)
18 application of collateral estoppel would be contrary to public policy.
19 (Pl.'s Opp'n at 5, 7.)

20    "The 'identical issue' requirement addresses whether
21 'identical factual allegations' are at stake in the two
22 proceedings . . . ." Lucido, 51 Cal. 3d at 342. "If new facts or
23 changed circumstances have occurred since the prior decision[,]" the
24 issue in the later proceeding may be different from the issue
25 previously decided, thus preventing the application of collateral
26 estoppel. Melendres v. City of L.A., 40 Cal. App. 3d 718, 730 (1974).
27 Plaintiffs argue the new "conclusive evidence" of Rose's innocence
28 shows Rose's trial "was unreliable or unfair" and makes "the facts in

this [proceeding so] markedly different from those at issue in . . . [Rose's] habeas proceeding[]" that the issue of ineffective assistance of counsel in this proceeding is different from what was litigated in state court. (Pl.'s Opp'n at 6.)

"To succeed [on an ineffective assistance of counsel claim] under the Sixth Amendment or [the California Constitution] a defendant must show (1) <u>deficient performance</u> [by defense counsel] <u>under an objective standard</u> . . . and (2) <u>prejudice</u> under a test of reasonable probability of an adverse effect on the outcome." <u>People v. Berryman</u>, 6 Cal. 4th 1048, 1081 (1993) (emphasis added), <u>overruled by</u> <u>People v. Hill</u>, 17 Cal. 4th 800 (1998) on other grounds. In Rose's state habeas proceeding, the Superior Court determined, under an objective standard, that Hudson did not perform deficiently when representing Rose. (Defs.' Req. Judicial Notice Ex. 7 at 6-7, 13-14.) Since Rose had to show deficient performance <u>and</u> prejudice, this determination was fatal to any ineffective assistance of counsel claim Rose sought to maintain.

The issue here is whether Hudson's unawareness of DNA testing that was "more advanced" than the DNA testing in existence when he represented Rose satisfies the deficient performance element. It does not because Hudson was not expected to be aware of that more advanced testing and the DNA testing in existence when Rose was tried was part of Rose's first habeas petition that the Superior Court denied. Therefore, the issue of Hudson's performance raised in Plaintiffs' Complaint is the same issue, for collateral estoppel purposes, that was decided adversely to Rose in his first state habeas proceeding. <u>See</u> <u>Younan v. Caruso</u>, 51 Cal. App. 4th 401, 414 n.7 (1996) (issues are the same for purposes of collateral estoppel "where

7

the . . . complaint is based on the same factual allegations of attorney neglect which were actually determined after a full evidentiary hearing in the habeas proceeding.")

The record reveals Defendants have met their burden of establishing that the identical issue of ineffective assistance of counsel was "actually litigated" and "necessarily decided" as part of Rose's first habeas petition; that the relationship between Rose and his three children is "'sufficiently close' so as to justify application of the doctrine of collateral estoppel" to Rose and his plaintiff children, People v. Sims, 32 Cal. 3d 468, 486 (1982), superceded by statute in Cal. Vehicle Code § 13353.2 on other grounds, and that the Superior Court's rejection of Rose's ineffective assistance claim was a final decision on the merits.

Plaintiffs also argue in a conclusory manner that, not withstanding the above, application of collateral estoppel is inappropriate because it will not serve "public policy." However, the policies supporting collateral estoppel--preventing litigation of identical issues, conserving judicial resources, and preventing inconsistent judgments--are served by applying collateral estoppel in this instance. Younan, 51 Cal. App. 4th at 414-15. The record reveals Rose had an opportunity to fully litigate the issue of Hudson's performance. Under the circumstances, preventing Plaintiffs from relitigating the issue of Hudson's performance as defense counsel is both fair and sound judicial policy. Therefore, Plaintiffs are collaterally estopped from relitigating the adequacy of Hudson's performance as defense counsel. Accordingly, Plaintiffs cannot prevail on an ineffective assistance of counsel claim based on Hudson's representation of Rose.

1         Since Counts One and Two are predicated on alleged
2    ineffective assistance of counsel that Plaintiffs cannot establish due
3    to the application of the collateral estoppel doctrine, they are
4    dismissed with prejudice.
5         Collateral estoppel also requires Count Five, which alleges
6    Defendants violated Plaintiffs' substantive due process rights to
7    familial companionship, society, and support under the Fourteenth
8    Amendment, be dismissed.  Plaintiffs' substantive due process rights
9    are derived from Rose's Constitutional rights; therefore, Plaintiffs
10   cannot prevail on such a claim unless they establish an underlying
11   violation of Rose's Constitutional rights.  Estate of Torres v.
12   Terhune, 2002 WL 32107991, at *10 (E.D. Cal. Jan. 9, 2002).  Although
13   Count Five does not specify the Constitutional violation on which it
14   is predicated, there are only two Constitutional violations alleged in
15   the Complaint: ineffective assistance of counsel in violation of the
16   Sixth Amendment, and prosecutorial misconduct in violation of the
17   Fourteenth Amendment.  Since Count Six, which specifically alleges
18   prosecutorial misconduct as the underlying Constitutional violation,
19   is also a substantive due process claim, Count Five can only be
20   understood to allege ineffective assistance of counsel as the
21   underlying Constitutional violation.  Since collateral estoppel
22   prevents Plaintiffs from establishing the underlying Constitutional
23   violation in Count Five, Count Five is also dismissed with prejudice.
24        B.   Prosecutorial Misconduct
25        Plaintiffs argue their prosecutorial misconduct claims are
26   not barred by collateral estoppel because the claims are based on
27   Mayo's pretrial "investigative activities," while Rose's habeas
28   proceedings "only raised the issue of prosecutorial misconduct . . .

9

during the criminal trial." (Pl.'s Opp'n at 7.) Defendants dismissal motion on this ground is denied since they have not shown Mayo's alleged pretrial investigative misconduct was litigated in a prior state proceeding.

II. The Rooker-Feldman Doctrine

Defendants also argue the Complaint should be dismissed under the Rooker-Feldman doctrine. This doctrine prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment. Mothershed v. Justices of the Supreme Court, 410 F.3d 602, 606 (9th Cir. 2005). However, the remaining three claims in the Complaint are premised on Mayo's alleged prosecutorial misconduct in pretrial "investigative activities." These claims concern an issue that has not been shown to have been litigated in any prior state court proceeding. Consequently, the Rooker-Feldman doctrine has not been shown applicable, and Defendants' dismissal motion on this ground is denied.

III. Eleventh Amendment Immunity

Defendants argue to the extent the remaining claims under 42 U.S.C. section 1983 ("section 1983"), Counts Three and Six, name Mayo in his official capacity, they must be dismissed because they seek damages for actions taken by Mayo in his capacity as a state officer, and are therefore barred by the Eleventh Amendment to the United States Constitution. Count Three seeks damages against the County for Mayo's "investigative activities" and Count Six seeks damages against both Defendants for those same "investigative activities" that deprived Plaintiffs of their substantive due process rights. Defendants contend that since the claims are based on Mayo's actions

1  in his capacity as a state officer, Mayo is immune from suit, and the
2  County cannot be liable for Mayo's actions.
3       "[T]he County can be held liable only if [Mayo] acted as a
4  county officer.  If [Mayo] was a state officer when he engaged in the
5  acts of which [Plaintiffs] complain[], he is entitled to Eleventh
6  Amendment immunity (to the extent that he is sued in his official
7  capacity) and the County cannot be held liable for those acts.  Thus
8  liability for both [D]efendants depends on the same question: whether
9  [Mayo] acted on behalf of the state or the county."  Ceballos v.
10 Garcetti, 361 F.3d 1168, 1182 (9th Cir. 2004) (citations omitted),
11 rev'd by Garcetti v. Ceballos, --- U.S. ---- (2006) on other grounds.
12      Whether a prosecutor acts on behalf of the state or the
13 county depends on his "actual function . . . in a particular area."
14 Weiner v. San Diego County, 210 F.3d 1025, 1028 (9th Cir. 2000)
15 (quoting McMillian v. Monroe County Alabama, 520 U.S. 781, 785
16 (1997)).  A prosecutor acts on behalf of the state "[w]hen [he]
17 engages in prosecutorial conduct, . . . but at other times, he should
18 be characterized as a county officer."  Bishop Paiute Tribe v. County
19 of Inyo, 275 F.3d 893, 906 (9th Cir. 2002), vacated and remanded by
20 Inyo County, Cal. v. Paiute-Shoshone Indians of the Bishop Community
21 of the Bishop Colony, 538 U.S. 701 (2003) on other grounds.  When
22 determining whether a prosecutor was engaged in prosecutorial or non-
23 prosecutorial conduct the inquiry is whether he was acting in the role
24 of "advocate" or "detective," because "[t]here is a distinction
25 between the advocate's role in evaluating evidence and interviewing
26 witnesses as he prepares for trial, . . . and the detective's role in
27 searching for the clues and corroboration that might give him probable
28 cause to recommend that a suspect be arrested . . . ."  Bishop, 275

F.3d at 909 (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993)). When acting in the former role prosecutors are engaged in a prosecutorial function and are officers of the state; in the latter role they are engaged in an investigatory function and are officers of the county. Id.; see Ceballos, 361 F.3d at 1183 (stating prosecutors "performing investigatory and other functions . . . are officers of the county").

Plaintiffs allege "Mayo . . . participated in investigative acts which he knew or should have known would and did yield false information, including, but not limited to, the [wrongful] identification of [Rose as the] perpetrator." (Compl. ¶ 13.) Plaintiffs allege Rose was identified by the victim as her assailant "[o]nly after the police accused [the victim] of manufacturing her story and then told her that they already knew [Rose was the assailant]." (Id. ¶ 12.) Plaintiffs have alleged Mayo was involved in these actions with knowledge that Rose would be wrongly identified as the victim's assailant. (Id. ¶ 14.)

Mayo's alleged misconduct occurred while he was investigating and seeking to identify the perpetrator of a sexual assault. Mayo was not prosecuting or preparing to prosecute a criminal violation at the time of his alleged misconduct since the prosecution of Rose had not commenced. Therefore, Mayo was performing the non-prosecutorial, investigative role of a "detective" on behalf of the County rather than the prosecutorial role of an "advocate." For the stated reasons, Defendants' dismissal motion on this ground is denied.

////

////

IV. <u>Individual Immunities</u>

Mayo argues to the extent he is sued under section 1983 in his individual capacity he is entitled to absolute prosecutorial and qualified immunity. Mayo contends these immunities require dismissal of Count Six, which is the only section 1983 claim remaining against him personally.

A prosecutor is entitled to absolute prosecutorial immunity from liability under section 1983 for violating an individual's federal constitutional rights when he engages in activities "intimately associated with the judicial phase of the criminal process." <u>Broam v. Bogan</u>, 320 F.3d 1023, 1028 (9th Cir. 2003) (quoting <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430 (1976)). However, a prosecutor is entitled to claim only qualified immunity if he "is performing investigatory or administrative functions, or is essentially functioning as a police officer or detective." <u>Id.</u> "Thus, immunity decisions regarding the liability of a state prosecutor depend on 'the nature of the function performed, not the identity of the actor who performed it.'" <u>Id.</u> at 1029 (quoting <u>Kalina v. Fletcher</u>, 522 U.S. 118, 127 (1997)).

    A. <u>Absolute Prosecutorial Immunity</u>

Since the actions of Mayo upon which Plaintiffs' claims are based were investigatory in nature, he is not entitled to absolute prosecutorial immunity. Therefore, his dismissal motion on this ground is denied. <u>Ceballos</u>, 361 F.3d at 1184 ("[W]hen a prosecutor acts as an investigator . . . he [may] receive[] only qualified immunity.").

////
////

B.  <u>Qualified Immunity</u>

"To decide whether a defendant is protected by qualified immunity, a court must first determine whether, 'taken in the light most favorable to the party asserting injury, . . . the facts alleged show the [defendant's] conduct violated a constitutional right.' If the plaintiff's factual allegations do add up to a violation of the plaintiff's federal rights, then the court must proceed to determine whether the right was 'clearly established,' i.e., whether the contours of the right were already delineated with sufficient clarity to make a reasonable [person] in the defendant's circumstances aware that what he was doing violated the right." <u>Devereaux v. Abbey</u>, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc) (citations omitted).

Mayo argues his "allegedly unconstitutional conduct [is] not altogether clear" from the Complaint. (Defs.' Mot. at 9.) However, Plaintiffs' Complaint can be read as asserting a claim for violation of Rose's substantive due process right not to be subjected to criminal charges based on deliberately fabricated evidence. "[T]o support such a claim, [Plaintiffs] must, at a minimum, [allege facts that support] at least one of the following two propositions: (1) [Mayo] continued [the] investigation of [Rose] despite the fact that [he] knew or should have known that [Rose] was innocent; or (2) [Mayo] used investigative techniques that were so coercive and abusive that [he] knew or should have known that those techniques would yield false information." <u>Devereaux</u>, 263 F.3d at 1076.

Plaintiffs allege Mayo engaged in improper investigatory activities, "including, but not limited to[,] directing that witnesses be interrogated in such a fashion so as to elicit false incriminating statements against [Rose]." (Compl. ¶ 7.) As an example of the

14

1  improper investigative techniques Mayo engaged in, Plaintiffs allege
2  that "following the reported rape, [the victim] stated that she did
3  not see her assailant's face" and "continually asserted that she did
4  not know who assaulted her." (Id. ¶ 12.)  But "after the police
5  accused her of manufacturing her story and [] told her that they
6  already knew it was [Rose], . . . [the victim] tentatively suggest[ed]
7  that [Rose] might have been her assailant." (Id.)  Plaintiffs allege
8  Mayo "knew or should have known that his investigatory activities
9  . . . would and did yield false information, including, but not
10 limited to, the identification of the wrong perpetrator." (Id. ¶ 7.)
11 Finally, Plaintiffs allege Mayo's misconduct resulted "in the wrongful
12 conviction of [Rose]." (Id. at 2.)  Such allegations, when accepted
13 as true and taken in the light most favorable to Plaintiffs, support a
14 claim for violation of the "constitutional due process right not to be
15 subjected to criminal charges on the basis of false evidence that was
16 deliberately fabricated by the government" under the second
17 proposition. Devereaux, 263 F.3d at 1074-75.

18         Nor has Mayo shown that he prevails on the second inquiry
19 under the qualified immunity analysis. Devereaux holds that the
20 "constitutional due process right not to be subjected to criminal
21 charges on the basis of false evidence that was deliberately
22 fabricated by the government" is "clearly established." Id.  This
23 right was "clearly established" at the time of Mayo's alleged
24 misconduct.  See id. at 1075.  Therefore, Mayo has not shown he is
25 entitled to qualified immunity, and his dismissal motion on this
26 ground is denied.
27 ////
28 ////

VI. <u>Penal Code section 4904</u>

Finally, Defendants argue Plaintiffs' Complaint should be dismissed because California Penal Code section 4904 ("section 4904")[3] is the only remedy for wrongful conviction in California. Defendants have cited no authority indicating that section 4904 is the exclusive remedy available to a wrongfully convicted criminal defendant. Therefore, Defendants' dismissal motion on this ground is denied.

<u>CONCLUSION</u>

For the reasons set forth above, Counts One, Two, and Five are dismissed with prejudice, and the other portions of Defendants' dismissal motion are denied.

IT IS SO ORDERED.

Dated: June 28, 2006

<u>/s/ Garland E. Burrell, Jr.</u><br>
GARLAND E. BURRELL, JR.<br>
United States District Judge

---

[3] Section 4904 provides:
If the evidence shows that the crime with which the claimant was charged was either not committed at all, or, if committed, was not committed by the claimant, and that the claimant did not, by any act or omission either intentionally or negligently, contribute to the bringing about of his or her arrest or conviction, and that the claimant has sustained pecuniary injury through his or her erroneous conviction and imprisonment, the State Board of Control shall report the facts of the case and its conclusions to the next Legislature of this state, with a recommendation that an appropriation be made by the Legislature for the purpose of indemnifying the claimant for the pecuniary injury; but the amount of the appropriation recommended shall be a sum equivalent to one hundred dollars ($100) per day of incarceration served subsequent to the claimant's conviction and that appropriation shall not be treated as gross income to the recipient under the provisions of the Revenue and Taxation Code.